So we're going to end the day with fireworks with our fourth and final case. Hopefully not real ones, just maybe rhetorical fireworks. Correct. 23-1661 Jake's Fireworks Inc. v. United States Consumer Product Safety Commission. Mr. Dunford. Thank you, Your Honor. May it please the Court. Jake's is here today because beginning in 2006, the Consumer Product Safety Commission, through its compliance office, issued to Jake's a series of notices of noncompliance. These notices told Jake's that the compliance office had sampled products of Jake's at the ports, that as a result of the testing that had done, some of those samples were banned or misbranded hazardous substances, that it was illegal to introduce those into commerce or to sell them. Many of the notices said that the fireworks must be destroyed within 90 days. And finally, the notices warned Jake's of significant civil and criminal penalties for noncompliance. But the Commission says, despite all these determinations, that Jake's cannot get judicial review until the Commission makes yet another determination, and that is the decision to litigate. But according to the Supreme Court and SACIT and other cases, those are two separate determinations. That is, there's a determination made about the law and the application of the law to the facts, and then there's a determination about whether to litigate. So we submit that the District Court err by saying that these notices did not qualify as final agency action. To the contrary, the notices placed Jake's in the very dilemma that the APA is supposed to prevent, and that is the dilemma of complying with the notices or violating them and risking significant penalties. Therefore, we think that the notices easily satisfy the two-pronged test that the Supreme Court set forth in Bennett v. Speer. Let me ask you a question about that. The notices exist. They obviously give you some your client significant cause for concern, but the law remains the law, right? Your client would have had an obligation to comply with the statute even if the agency had never been involved. So how is your client in any worse position than any other company that has to comply with the law? Yeah, well, I have two points to that, and this goes to the second Bennett prong, which says that the notices must be an action which determine rights or obligations or from which legal consequences flow. And the legal consequences in this case is that they put Jake's on notice that these products are substantial hazardous substances. That's because the statute, at least according to the agency, compels that result. It compels the result that they violate the statute. But the notices arguably can remove any defense to an accusation of knowing or willful violation. And a knowing violation results in civil penalties. A willful violation can result in criminal penalties, including jail time. And so without those notices, the commission can use those notices to prove  that the agency has violated the statute. And so that goes back to the statute. The statute is the dangerous and hazardous substances act, and the statute seems to give the agency a good deal of leeway and discretion in banning the importation of dangerous and hazardous substances. And what concerns me is that you are trying to give, with your view of final orders, that you're trying to give the compliance office a position that the statute doesn't. And you're trying to sort of restructure the agency and elevate the role of the compliance office in a way that I'm not sure the statute does. Thank you, Judge. Respectfully, I disagree. The statute allows the commission to delegate all of its powers, with the exception of the subpoena power, to any officer or employee of the agency. And according to the commission's own regulations, it has delegated, among other things, field enforcement and compliance to the compliance office. What right do we have to take subordinate offices and staff offices and put them in an elevated position? And just saying that, you know, I'm not sure the statute does that they have the final word when the statute seems to repose the ultimate authority in the product safety commission and in the commissioners itself. I wonder whether we're just trying to turn the structure of this agency upside down and have the compliance office in the driver's seat, irrespective of the role that the statute seems to envision the commission should play. Well, but the statute, again, also allows the commission to delegate its powers, and so the commission has put the compliance office in the driver's seat. Well, the statute says the commission shall determine, the commission shall this, and it doesn't mention the compliance office. No, but it says that the commission can delegate all of its powers except the subpoena power. And so the question, though, is whether these notices are the consummation of a discrete decision-making process. And I'd point the court here to the Fourth Circuit decision in Howard County v. FAA, which Judge Diaz, you wrote. In that case, there were two agency actions at issue, and it involved flight regulations out of BWI Airport in 2016. What you're talking about, this kind of dialogue between the federal agencies on the one hand and regulated entities on the other, takes place all across government, and it has substantial benefits for both the regulated entity, which can comply and not face enforcement procedure, and it has benefits for the agency, which can lead to voluntary compliance without the need to undertake enforcement proceedings. And if the compliance office feels that it is issuing a final order when it sends out a noncompliance letter, that's going to change the dynamic and the dialogue between the agency and the regulated entity quite substantially because the compliance office is structured with the whole idea that we can get this resolved if we possibly can informally, and you would turn that understanding on its head and say that, no, you've got to issue this formal, this final order, come sooner rather than later. But agencies act in an informal way preliminarily all the time. The Treasury Department does. The IRS Department does. Regulated entities need a source that they can go to, and they can say, is this in violation of the law? And the whole dynamic would be changed. I'm just fearful that the whole dynamic would be changed in the utility of the compliance office if we adopted your view of what's a final order, and also whether we would be doing a formal order. I've been in many meetings and the valuable role of the commission and the general counsel of the commission, and the commission itself and the Department of Justice and other entities, to a degree putting the compliance office in the driver's seat. And I don't see the statute giving me the authority to do what is, in effect, a restructuring of an agency that Congress has entrusted with a role in helping to protect the people of the country from dangerous and hazardous substances. That is quite, it may just seem like a technical issue to you about what's a final order, but it has, in my humble judgment, profound consequences. And in its practical effect and in what we have done to the purpose of Congress and the way in which Congress implemented that purpose. And so this is not just in my, speaking purely for myself, it is not just a technical procedural issue. It is an attempt to short circuit procedures that Congress has set forth, and I think the deleterious, socially deleterious consequences for hazardous and dangerous substances could be significant. Thank you, Your Honor, and I can make a few points. On the voluntary question, that was the case in Sackett. The compliance order in Sackett was called for voluntary action, and Justice Scalia said in the opinion, if a regulated party does not cooperate, that doesn't make the order any less final. So the fact that the commission allegedly seeks voluntary compliance does not prove that the notices are non-final. With respect to the practical questions, I agree, and the Supreme Court has said over and over again, that the final agency analysis is supposed to be a pragmatic inquiry. And what we have here is a series of letters from the compliance office ordering Jake's to destroy its fireworks and threatening civil and criminal penalties, and it obviously has a profound effect on its day-to-day activities. I think that's maybe where your argument breaks down, because I went and looked at the actual orders, and you're saying that they order Jake's to do something, and actually they say the staff requests this. We also request that. So it seems to me, and follow-up notices state that the staff reiterates its requests. And so it seems to me they've told you all along that they are requests. Well, but most of the notices say that the fireworks must be destroyed. That's what most of the notices say. And they say they must be destroyed within 90 days, unless you can convince the compliance office otherwise. And with respect to finality, Jake's isn't the only one that considers these notices final. And the proof of that It's the only one here, right? I'm sorry? It's the only one before us, right? No, but I'm saying across the government as well. One effect of the notices, as we said, we don't think the actions of the Customs Bureau are dispositive here. But as the Commission emphasizes in its brief, the compliance office did reconsider some of the tests, and after the Commission's reconsideration, it seems to me like that's indication that this isn't final. The Commission's reconsidering things. No, because what, in fact, they told the Customs Bureau to release those. So the Customs Bureau found that decision to be final. That decision wasn't for further review of the Commission's. The compliance office itself made that determination, and the Customs Bureau accepted it as the Supreme Court's decision in Sackett and Hawks. The mere possibility of reconsideration does not make a final notice non-final. They have gone back to the Commission numerous times, and importantly, I think the issues that Jake's is arguing are not the facts in terms of the application necessarily. Jake's contends that the Audible Effects Regulation does not apply to these fireworks at all. That was clear in the initial regulation. It said this does not apply to Class C fireworks, which are the fireworks at issue. The report's labeling regulation doesn't exist, and that's because the Commission has never concluded that the noise by the firework constitutes a consumer hazard. So Jake's is challenging the determination. It's final. There is no question about it that the Commission believes that these two regulations apply to Jake's fireworks. I can just say that one thing a court needs to recognize is when we are wading in over our heads, and we can't predict the fallout and all the deleterious consequences that would ensue if we held this to be a final judgment. We would be changing the whole dynamic within the agency in a manner that we cannot foresee, and sometimes you need to understand you're looking through a glass darkly, and I just worry that I'm wading in over my head with consequences that I could neither predict nor foresee. May I respond? I appreciate that, Your Honor, but this doesn't prevent agencies from giving guidance. It doesn't prevent agencies from truly requesting compliance if it's not. But in this case, and this is the only case before you, in this case, the Compliance Office has repeatedly said these regulations apply to your fireworks. The Commission admits that the Compliance Office applied the law to specific shipments of Jake's products, so this is not simply a general view of the law issued to the general public. The Commission is still free to do that. I am no big fan of the Administrative State, but I'm no big fan of waging warfare against the Administrative State. I think there ought to be some balance somewhere, and you know, as conventional now as it's become to be, of course, to be legally skeptical of the Administrative State, I think that's fine. I understand it. I'm sympathetic to some degree, but we're going to have to rely on the Administrative State for areas in which it These folks within the Compliance Office and within the agency have a deep experience with the kinds of particular situation, in my singular judgment, would be let them do their jobs. Just let them do their jobs, and they, you know, they conducted noise tests, and they told the folks, your clients, what was the problem, what the problems were. I realize these non-compliance notices go rather long, but what would you have the agency do? Write something cryptic? Because then they would be accused of acting arbitrarily and capriciously. Understood, Your Honor, but these notices, the problem is that they have put Jakes in the dilemma of complying or ignoring and risking significant civil and criminal penalties. That's exactly the situation. Let me ask you about that, and then as a follow-up to Judge Motza's question about the tenor and tone of these notices, she read off some of them, and then your response to that was, that's all well and good, but we've got this order of destruction that really puts us in a bit of a quandary. So what if the agency had simply couched that order of destruction in the form of a request? We think, given our analysis of the relevant statutes and regulations, we request that you destroy these fireworks. Then what? I still think that it's final because then Jakes is on notice, or at least the agency can argue, if it litigates, that Jakes had knowledge and violated the law with knowledge and willfully, and therefore is subject to civil... That sounds like they can't do anything. Back to Judge Wilkinson's question, the agency can't provide any kind of guidance for fear of the recipient of the guidance in saying, well, that puts us on knowledge and now we're in a bit of a problem. No, well, I think it depends on what the statement is, and the Commission says this on page 39 of its brief, that courts have found that letters like this can be used to show knowledge if the statement shows a definitive position of the agency. So in other words, if Bennett Prong 1 is met, then Bennett Prong 2 is met here. And under Bennett Prong 1, the Commission has said definitively over and over again that these regulations apply to Jakes products and that Jakes products have been used. And the Commission admits we have no further avenue for review within the administrative agency. And in those situations, the Supreme Court has repeatedly held that's final agency action. All right. Thank you, Mr. Dunford. Thank you. Mr. Tenney. Thank you, Your Honor. May it please the Court, Daniel Tenney representing the Commission. The key point in this case is that the Commission has not made a determination on the legal and factual issues. Will it ever? What? It may or it may not. Well, that's kind of why that's not a very satisfactory answer, I don't think, to someone who's trying to comply with the law. Well, I mean, that's that's commonplace. I mean, that's one of the reasons we have final agency action doctrine is that some disputes may never arise if the Commission never takes any enforcement action or if or if they never take violative action. And if the dispute does arise, then the district court will resolve it with the benefit of the Commission of both the record that's built before the Commission and, you know, they could provide evidence and legal arguments and also with the benefit of the Commission's determination. I think that concerns me about this case, and maybe it's not anything unique in the regulatory context, is that in addition to any potential civil penalties, there's the specter of criminal prosecution. Does that change the calculus at all with respect to what an agency has to do in order to give fair notice and an opportunity to be heard to someone like Jake's? I mean, I guess I hope this is responsive to your question, but the specter of criminal penalties comes from the statute. It's not that it's not that they could be criminally prosecuted for violating the notices of compliance of noncompliance that they received. Those are neither a necessary nor sufficient condition for a criminal prosecution. So the point is just that if if the regulated entity violates the criminal laws, then, you know, then they could be criminally prosecuted. And what's happened here is just that the agency has provided some information that at the staff level, they've made determinations about these products. But going to that opinion, you're putting them on notice. It seemed to me that make your the criminal the criminal case stronger. Going to Judge Diaz's question. It might, Your Honor. And and and I think as as has been pointed out, you know, that's true of all kinds of communications that agencies can have with regulated entities. If if somebody in the compliance office made a phone call to Jake's and said, hey, we've been looking at your product and we discovered this problem, then that would put Jake's on notice. And that might significantly strengthen the criminal enforcement. But that's not a definitive position on anything. That's not final agency action. That's there's all sorts of things that can inform a criminal prosecution. The test for final agency action, as has been discussed, has these two parts. One is a definitive position of the agency, the consummation of the agency's decision making process. And the only evidence that they have basically two pieces of evidence that they say support that one is a supposed delegation of authority from the commission. The only thing they cite is a regulation that's just in the sort of general housekeeping regulations of the commission that describe in general terms the functions of the offices. Nobody in the commission thinks that the commission has delegated down its formal authority to make final legal and factual determinations about. I wonder if the agency was misusing or abusing its powers in the sense of a criminal prosecution. You could at that time evidentiary objections could be raised and all kinds of objections could be raised to the court. If there was an abuse of the agency process or impermissible evidence introduced, I share the concern that the chief brought up. I'm wondering if that is an issue to be faced in this case or whether it's something that's down the road because I don't think a court's going to allow an agency to run to misuse its authority in some way in the course of criminal proceedings. I agree with that and I guess a further point about both the criminal proceedings and the willfulness point is that obviously there are ways in which these notices could be used to support a showing of knowledge or willfulness, but the strength of them and the degree to which they would establish or help to establish knowledge of willfulness is significantly diminished by the fact that they are not the final determination of the agency. In Ipsen, one of the cases the other side relies on, the DC Circuit pointed that out and they were talking about the second prong of Bennett and we don't think you have to get there here because they don't pass the first prong and that's pretty clear, but even as to the second prong, there they said it's critical to their analysis that this is the definitive position and if we went into court and we said, well, we can show this is a knowing and willful violation because the staff told you that they thought that this legal standard applied and that hadn't been tested before the commission and they said, well, no, but we disagreed and we tested it before the commission. That's an issue that would come up. I'm not saying how it would be resolved, but the point is when you have, if the commission, and the statute also lays out a lot of procedures that the commission has to follow before it engages in civil or criminal action and during the course of those procedures, they can make legal arguments that would be assessed by the Office of General Counsel and by the commission. They can introduce evidence and the commission would then make a determination based on a factual record and legal arguments with all of the entities that have input into that. Can I ask a question about the content of the notices which are sometimes, you know, written in a sort of guidance forward looking way, but with respect to the orders of destruction, you are hereby ordered to destroy these fireworks within 90 days. I mean, that's pretty definitive, and so Jake says one option, well, two options, either do it or not, in which case they violated an order of the agency. So how are they supposed to deal with that? Yeah, I don't think order of the agency is the right description. What do you, how would you describe that? What is it? Well, I guess if you look at it in context, so all the letters contain the language that was cited earlier about the staff requests that you do this. Now, they have different language. Some of them say, if you choose to destroy the fireworks, here's how you go about doing that, and so that would obviously further underscore that these are not orders of the commission. But even without that language, both in the text of the letter and in the handbook that accompanies the letters and that is made available to explain what the role of the compliance office is and what these letters mean, it's clear that what they're saying is, if you don't do, you know, if you don't follow what we're suggesting here, then the consequence of that is that we could make a recommendation to the commission and the commission could take enforcement action. Against you, that that's the consequence. Nobody could bring them to court and say, you have violated this notice of noncompliance, and there's some legal consequence that attaches to that. If we took the if the commission took action against them, the commission would be saying you violated the underlying statutory and regulate regulatory provisions. And so what staff was saying, perhaps inartfully and perhaps more forcefully than necessary, but what they were saying and what would have been understood. I suspect that the maybe some things hanging on the periphery here, but I suspect that the question before us is a very narrow one. And that is in light of the statute and the way the statute is constructed and the way that the statute confers powers upon the commission. Is this notice on the part of the commission that would have various consequences, I suppose, you know, it's a question of sufficient unto the day, but what would I the only thing I see before me is whether putting the compliance office in the position of issuing a final judgment is consistent with the statutory powers that the act confers upon the commission. And I think that if there are deleterious consequences down the road, those can be dealt with down the road. But I wonder whether the way to deal with them is to essentially restructure commission's operations from the get go. It just seemed to me that the question was a fairly narrow one. I agree. And it's fundamentally the same question the DC Circuit encountered in the reliable automatic sprinklers case, where someone had also received something from the compliance office. And the DC Circuit pointed out that the governing statute and regulations made clear that before the commission made a final legal or factual determination about the compliance of somebody's products, there was notice and opportunity to be heard. This is interesting to contrast this case with the SACIT case. And the SACIT case is very different because there the statute conferred formal enforcement powers upon the Environmental Protection Agency and the EPA administrators, according to the statute in SACIT, could impose legal obligations. But the statute here does not give the Consumer Products Commission the same kind of authority that the statute in SACIT gave the EPA administrators. And just looking at the narrow question before me, the difference in those two statutes seems, it just seems to me, something that I should take seriously. I agree. And it's also a difference in who is acting. In SACIT, there was no argument that this determination was made by a subordinate and would be subject to a new determination or review by the governing body. The only argument there on the first prong of Bennett was that the same person who had made the decision could theoretically reconsider it. The Supreme Court said that wasn't good enough. But there was no sort of subordinate entity in sight. In fact, none of the cases on which the other side relies has a subordinate entity. All of the cases, some of them, prong one, is entirely conceded. That's true of Hawks, for example. And others of them, there's just no mention of the fact that there's a subordinate. I do want to go back to the language of the letters because I understood that was concerning the court. If you look at page 103, there's an example of one of these letters. And the first part that's bolded is the part that was read earlier from the bench. The staff requests that the distribution of the complete list of sample numbers not take place and that the existing inventory be destroyed. Then if you go down two paragraphs, it says, I assume that's supposed to be choose. It says chose. If you choose to destroy the goods in this shipment, the above-noted affidavit must be accompanied by. And then it has some more information. And then it goes on to say the sample lots must be destroyed within 90 days. That last part, the sample lots must be destroyed, is the part that the other side is relying on. But if you read it in the context of the letter, both the text of the letter and in terms of the handbook, which accompanied the letter, and which is also in the record here, and the governing statutes and regulations, all of it makes clear that what the staff is saying is we, the staff, we have limited authority. And what we can do is we can recommend to the commission that the commission take action against you. And if you want to head that off at the pass here, this is what you have to do. That's different from saying we are acting on behalf of the commission and we've made a final determination. And if you need another indication of this, I would refer you to footnote two on page eight of the other side's reply brief, which says that they reserve all their arguments in the event that there's an enforcement action. That's because they know that if this actually goes before the commission and someone's actually trying to get the commission to issue a recall order or some other order, that they will have an opportunity to present all these arguments. And the commission cannot say, we've already decided this through the compliance office. We delegated all of our power down. And so even though we give you notice and give you an opportunity to present new evidence and give you an opportunity to have a hearing, and we're going to hear from the office of general counsel, you know, none of that matters because the compliance office already made a binding determinative conclusion on the legality of your product. That's not what the commission is going to say. And that's just a further indication that they just have not established that the commission did anything. There is a, as I understand it, an online repository of delegation directives. There is, I'm sorry, I didn't hear that. There is an online repository of delegation directives. I believe that is the case. Commission has one. Okay. Do you know if it has reported any delegations of enforcement authorities to the compliance office? I don't want to, I don't want to overstate my knowledge. I know that the other side has not cited anything that would delegate the authority to make a final determination of this kind to the compliance office. And to my knowledge, this action has been filed. We're at the exact spot right now as we were when this action was filed. Is that right? Again, I don't want to overstate my knowledge of those delegations. But I guess the point that I would make to you, which I think is sufficient for this case, is that the commission has not delegated authority to make this kind of a determination down to the compliance office, either before this case was filed or after. Is it difficult to get the commission to vote on an enforcement action? Um, it can be. I mean, it depends on the nature of the enforcement action, I think. But I mean, I'm not sure what you mean by difficult. There's a process. Right. You provide notice. Yes, I'm trying to get you to sort of fill in the blanks of what I, what, and you say you don't know either about what's going on here. Oh, I guess I don't want to overstate my knowledge. But I think I can fill in a few blanks if that's helpful. I mean, I think there are circumstances. I mean, lots of times there are obvious violations, and they're resolved at the staff level. The staff will send out a letter like this. The person will know, you know, that they're out of compliance, or they'll work out some arrangement. That happens a lot. You know, there are some where there's compliance, and it's sort of an, they don't go along, and it's sort of an open and shut case. And you have to go, you know, you have to go through the steps. You go to the Office of General Counsel. You give them notice. Then they provide. The commission has to make both a determination of whether there's compliance or not, and then also a discretionary enforcement determination. But even sometimes those are easier if they know that the product is dangerous, and they want to do something. And so those involve all of the steps that I've described, and the commission is by no means a rubber stamp for anybody, but some of the cases are easier than others. In this case, Jake's argument here, and I take them at their word, is that they have, you know, they said, I think today, the commission hasn't applied this regulation in, you know, against this type of firework before. And so they would have a legal argument that this regulation shouldn't. The structure of the statute envisions many different players coming into the action before a final decision, a final enforcement decision is made. The General Counsel's Office is one of those. The Department of Justice is one of those. The commission itself is one of those. In other words, before formal enforcement is undertaken, it's going to go through one or more of the commission vote, Department of Justice approval, General Counsel's Office review. There's just no way to look at this and say, well, this noncompliance order is the final rule, because pursuant to the statute, there would be a number of steps before any kind of formal action could be undertaken. I agree with that. And that takes me back to the previous question, which is, I mean, Jake's has to sort of take one of two positions here. They have to either say, look, I understand you'd have to undertake all of these formal steps, but the writing's on the wall. Everything's already decided. There's no further legal or factual question, meaningfully, for the commission to resolve. And if that's the case, then this notice doesn't change anything. Then they're just sort of saying, we've been told that we have noncompliant products. The other option that they have, and I think this latter option is the one they're taking, is to say, we think there are open legal and factual questions. We've gotten the staff's position about them, but we don't have the commission's yet. And we think legally these regulations don't apply to us. The general counsel hasn't weighed in on that. This, the full commission, hasn't weighed in on that. And if that's the case, there cannot yet be final agency action. So what would they do in that situation? What are they to do now? I mean, we... They're in that situation. They're stuck, right? We recognize that it's... They can't sell the product, but it thinks the agency's wrong. So what does it do? I mean, we recognize that this is a situation that regulated entities face all the time. Right, right, right, right. Tell me about this agency and what they should do. What? Give them some guidance here, some free legal advice. Well, I mean, the problem is that, you know, they have to decide for themselves whether they think that the governing statute and regulations prohibit the sale of their products or not. Right. And if they think that it does, then they shouldn't sell the products. And if the fact that staff at the commission thought so, then that can inform their judgment. If they think, no, we think that our product is permissible, then they can sell it. And then if the commission takes action against them, then they can contest that. And I guess, and I see... They just ignore this. If they think that they're right, they just ignore this warning. Well, I mean, they would take it into account, but they wouldn't have to abide by it. That's correct. And I guess, I see I'm over time, but just if I could make two more quick points. One in response to that, you know, the point that was made earlier and that this court made in the sanitary board decision that's cited in our briefs is, if you're worried about regulated entities being in that position, then concluding that this is final agency action is not gonna be a solution to that because then they're just not gonna get this notice in the first place. Because what the commission definitely doesn't wanna do is have litigation in district court about this before the commission has had a chance to weigh in on it itself. So I understand that it's a difficult position, but it's a common one and... Is there any time in which the commission has to, in the statute of regulations, which is commission has to do something? I mean, I think... No, and the commission has sent out this letter, whatever you wanna call it. Do they have a certain amount of time to do that, like within 30 days or within... I mean, the difficulty here is that the non-compliant action would be to sell the fireworks, which hasn't been done yet. So they would have some limitations after that, but... What about the notice? The notice that it's an issue here. Do they have a time in which they have to issue that? I don't believe so, but I'm not certain of that. And I apologize that I'm not certain, but I don't wanna tell you I'm certain when I'm not. The mere possession of the fireworks which violate the regulations is not a problem? I think that... I mean, this ties into the very last point I wanted to make, which is about the border. But in terms of... Most of the regulations relate to the sale or distribution in interstate commerce. And so if they're in your warehouse, then that wouldn't apply. No, I suppose... Parties all the time, when they're skating close to the line, they have to estimate risks. I mean, that just... Actors in the private sector, when they're coming close to the line, they have to estimate risks and chances of enforcement. And that's not unusual. I mean, this situation is not an unusual one. They're told here, we think you're in noncompliance. There's no enforcement action, but requiring parties to estimate risk that's not an unusual situation at all. That's correct. And there are some circumstances in which there are mechanisms to... Congress has required agencies to give sort of formal answers to questions ahead of time. But this isn't one of those. The noncompliance order puts them in a better situation because they're told and they're not going to just go blind into an unlawful position and then have an enforcement proceeding brought. And then they say, wait a minute, you never told me. We asked you, you never told me. And so the party, it seems to me, is in a better position by saying, look, this is where you stand. We think this is noncompliant. They're not going to enforce it. But, you know, what do we want to do? We want to say that the compliance office should not issue these sorts of statements or that they're final judgments. But you will completely change the dynamic here and you will run the risk that the compliance office will not issue these noncompliance letters. Why won't they issue them? Because they're final orders. And then who's going to be beneficial and who's not? And if they don't issue these, don't give full warning and they don't issue these noncompliance orders, it is going to increase the risk substantially that private parties are going to be criminally prosecuted without any kind of notice from government that what they were doing ran afoul of what might be the law. And what I'm saying is that there's going to be, if we try to change it, it's going to be a lose-lose proposition. Government's going to lose the ability to get a voluntary compliance without undertaking enforcement actions. And the private party and the regulated party is going to lose the benefit of guidance in patterning and fashioning its own conduct. And there are dangers in wading into consequences that we cannot foresee. And discouraging and preventing these orders, as obnoxious as they must be, and as unpleasant it must be to receive one of them, we could succeed in making the situation infinitely worse. And sending parties into prosecution without forewarning. That's the problem. Yes, I agree. And that point has been pointed out in some of the cases. I see I'm over time. If I could make one last point, it's very quick. I was surprised to hear counsel mention the Customs and Border Protection part of this case as sort of a bolstering their finality argument. We don't think there's anything that happened there that would cause this to be final. But just to clarify the point for the court, if you look at page 19, footnote 8 of their opening brief, they describe as irrelevant the point that Customs and Border Protection hadn't taken action. And they say that Customs and Border Protection's, and now I'm quoting, actions in this case have no bearing on the finality questions here. So there's nothing relating to Customs and Border Protection that is before the court. Thank you, Mr. Tenney. Thank you, Ernest. Thank you. We agree that no actions of the Customs applies here. My point in raising it before was simply that when the Compliance Office makes a decision, the Customs Bureau treats it as final. And with respect to the finality, again, once the Commission started issuing these notices to Jake's, it's true, invited Jake's to provide evidence and arguments. And if, assuming this hypothetical, if in response to Jake's arguments, the Compliance Office had said, you're right, these regulations do not apply, or we've retested all of them, they are all good. In other words, if the Compliance Office had given Jake's a green light on all of the shipments at issue, that would have been the final decision for the agency. That decision is not appealed above. So the Compliance Office absolutely does make final decisions for the agency. The only question is, what is the result of that? My friend conceded, I think, that these letters can be used as evidence, not dispositive evidence, but they can be used as evidence to show knowledge or willfulness. And several courts have confirmed that. The Supreme Court in Frozen Foods said the letter could be grounds for civil penalties. Sackett said that the compliance order exposed the regulated parties. In Ipsen Pharmaceuticals and Bellion Spirits, the court said that the letters refuted any defense that the regulated party would have against an accusation of knowing or willful violation. Also, there are several cases in which subordinate officials have made final decisions. This is the Riolana case, Ipsen Pharmaceuticals, and in the San Francisco Herring Association, the court said that letters and directions from patrol officers. That case involved commercial fishing. The Park Service said that where certain fishing was going on was illegal. They issued letters, and then the patrolman went out and said, what you're doing is illegal. And the court said that a combination of those actions were final agency action. Also, with respect to the, my friend mentioned the perhaps inartful language in the notices, but I point the court to the handbook, and this is a joint appendix 54 and 60, and the handbook says that the notices will advise regulated parties which products are illegal and which statutes or regulations have been violated. So again, this is a decision that has been made. These aren't just mere statements or mere opinions. One, sorry, one more point is on the, that we have the decision of whether to, we can make the argument that the compliance officer's notices are merely recommendations that we have to take that into account. But that, again, that was true. You've got to come back, Counselor, you've got to come back to this, to the statute. And we're not talking about the importation of toilet seats. We're talking about our furnitures. We're talking about dangerous and hazardous substances. And this statute, events, you can't read this statute without recognizing that it evinces a desire on the part of Congress to have an agency that has, can exercise steps to protect the public, and that will, it gives the agency some flexibility to carry out what is an extremely important mission, which is to protect the country, as I say, not from innocuous products, but from very dangerous kinds of things. And fireworks may not seem like a big deal, but there could be other substances that are a very big deal. And this is not a restrictive statute. It is a statute which empowers the Product Safety Commission to a greater degree than other agencies in other subject areas are empowered. That's the problem. It's in part, not in whole, but in part, it's the nature of your product. But respectfully, there's no carve out in the APA for dangerous products. If the agency has issued a final decision, that's judicially reviewable right away. My last point is that my friend said that we had to weigh the risks, and that's true of all regulated parties. But in this case, it's not simply a matter of deciding whether or not, we can read the statute, of course, but again, the import of the notices reduces the ability for Jakes to argue that if it is noncompliant, that it's so without knowledge. And that would be the case even if it were more advisory than prescriptive or mandatory? I think it depends. But clearly, if it's more advisory, it goes to the other way. But in this case, again, this has been going on since 2006. The Compliance Office has never changed its mind about the applicability of the regulations. The Commission concedes we have no further avenues for administrative review. And there is no deadline. The Commission could hold this over Jake's head forever. There's no deadline to send it to the Commission for review. Jakes is stuck. All right. Thank you, counsel. Thank you. Thank both counsel for their arguments. We appreciate the advocacy on behalf of your respective clients. We'll come down, re-counsel, and then adjourn for the day. Actually, I guess not, because we've got a session this afternoon. Until 2.30.
judges: Albert Diaz, J. Harvie Wilkinson III, Diana Gribbon Motz